**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF NEW JERSEY**

-------------------------------------------------------------------X

**SHAQUANA HARDY,**

                                              Civil Action No.

                    **Plaintiff,**

       v.

                                             **COMPLAINT**

**AMAZON.COM, LLC; AMAZON.COM SERVICES,**
**INC.; AMAZON.COM DEDC, LLC; AMAZON.COM**
**INC.; ACY1 AMAZON FULFILLMENT CENTER;**
**MICHAEL DOUGLAS; JONATHAN LAST NAME**       Plaintiff Demands a Trial by Jury
**UNKNOWN; MEGAN LAST NAME UNKNOWN;**
**BRIANNA LAST NAME UNKNOWN; AND (DAVID**
**PITTS;**

                    **Defendants.**

-------------------------------------------------------------------X

Plaintiff, Shaquanna Hardy, as and for her Complaint against Defendants respectfully alleges

upon information and belief as follows:

**NATURE OF THE CASE**

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

   §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L.

   No. 102-166 ("Title VII")) and New Jersey State law and seeks damages to redress injuries

   Plaintiff suffered as a result of discrimination and retaliation.

2. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves

   questions under federal law under Title VII.

3.  This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts as Plaintiff's Title VII claims.

4.  Venue is this judicial district is proper pursuant to 28 U.S.C §1391(b) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in West Deptford within the District of New Jersey, and Defendants are subjected to personal jurisdiction here.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.  Around August 13, 2019, Plaintiff timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

6.  The matter was assigned EEOC number 530-2019-05600.

7.  Plaintiff by and through her attorney requested that her Charge be simultaneously filed with, "any other State or local agency with whom you have a work sharing agreement as Claimant is making a claim under all applicable rules, regulations, statutes and ordinances that apply to Claimant's facts."

8.  Around September 2, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.

9.  Around October 8, 2020, Plaintiff timely filed a supplemental charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

10. The supplemental charge was assigned EEOC number 530-2021-00167.

11. Around October 14, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.

12. The continuing acts of employment discrimination reference in Plaintiff's charges of discrimination were committed by the following parties: (1) Amazon.com, LLC; (2) Amazon.com Services, Inc.; (3) Amazon.com Dedc, LLC; (4) Amazon.com Inc.; (5) ACY1 Amazon Fulfillment Center; (6) Michael Douglas; (7) Jonathan Last Name Unknown; (8) Megan Last Name Unknown; (9) Brianna Last Name Unknown; and (10) David Pitts .

13. This action was being commenced within ninety (90) days of Plaintiff receiving the Notice of Right to Sue.

14. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

15. Plaintiff's State claims are ripe.

## **PARTIES**

16. Plaintiff Shaquana Hardy (hereinafter referred to as "Plaintiff") is an individual female who is a resident of the State of New Jersey.

17. Defendant AMAZON.COM LLC was a foreign business corporation duly existing under the laws of the State of Washington with its principal place of business in Seattle, Washington.

18. At all times material, Defendant AMAZON.COM SERVICES, LLC, was a foreign business corporation duly existing under the laws of the State of Washington with its principal place of business in Seattle, Washington.

19. At all times material, Defendant AMAZON.COM DEDC., LLC, was a foreign business corporation duly existing under the laws of the State of Delaware, with its principal place of business in New Castle, Delaware.

20. At all times material, Defendant AMAZON.COM, LLC, was a business corporation duly existing under the laws of the State of New Jersey, with its principal place of business located at, 240 Mantua Grove Road, West Deptford, NJ 08066.

21. At all times Material, Defendant ACY1 AMAZON FULLFILLMENT CENTER was a business corporation duly existing under the laws of the State of New Jersey, with its principal place of business located at, 240 Mantua Grove Road, West Deptford, NJ 08066.

22. The above-mentioned Defendants will hereinafter collectively be referred to as "Defendant Amazon."

23. Defendant MICHAEL DOUGLAS (hereinafter "Defendant Douglas") is an individual male.

24. At all times material, Defendant Douglas was and upon information and belief still is employed by Defendant Amazon as a "packer."

25. Defendant JOHNATHAN LAST NAME UNKNOWN (hereinafter "Defendant Johnathan") is an individual male.

26. At all times material, Defendant Johnathan was and upon information and belief still is employed by Defendant Amazon as a "supervisor."

27. At all times material, Defendant Johnathan had supervisory authority over Plaintiff.

28. Defendant BRIANNA LAST NAME UNKNOWN (hereinafter "Defendant Brianna") is an individual female.

29. At all times material, Defendant Brianna was and upon information and belief still is employed by Defendant Amazon as a "supervisor of ambassadors."

30. At all times material, Defendant Brianna had supervisory authority over Plaintiff.

31. Defendant MEGAN LAST NAME UNKNOWN (hereinafter "Defendant Megan") is an individual female.

32. At all times material, Defendant Megan was and upon information and belief still is employed by Defendant Amazon as a "Human Resources Representative."

33. At all times material, Defendant MEGAN had supervisory authority over Plaintiff.

34. Defendant DAVID PITTS (hereinafter "Defendant Pitts") is an individual male.

35. At all times material, Defendant Pitts was and upon information and belief still is employed by Defendant Amazon as a "supervisor."

36. At all times material, Defendant Pitts had supervisory authority over Plaintiff.

37. At all times material, Defendants jointly employed Plaintiff.

## MATERIAL FACTS

38. Around September 2018, Plaintiff was hired by Defendant Amazon as an inductor.

39. Around October 2018, Plaintiff was promoted to Ambassador through the end of 2018.

40. Around May 2019, Defendant Douglas told Britney Musa, a coworker of his and Plaintiff's, that he wanted to **have a threesome** with himself, Plaintiff, and Ms. Musa.

41. Ms. Musa informed Plaintiff of what Defendant Douglas had told her.

42. Defendant Douglas walked up to Plaintiff and repeated what he had said to Ms. Musa; that he wanted to **have a threesome** with Plaintiff and Ms. Musa.

43. Plaintiff and Ms. Musa told Defendant Douglas that what he was saying was inappropriate, that he needed to stop, and he was making them both uncomfortable.

44. Around May 30, 2019, Plaintiff arrived at work at 6:30 AM for her scheduled shift.

45. Sometime between 8:00 AM and 10:00 AM, prior to lunch, Defendant Douglas approached Plaintiff and began touching her personal belongings.

46. Additionally, Defendant Douglas told Plaintiff that he missed her and made other sexually inappropriate and explicit comments toward her.

47. Defendant Douglas was in close proximity to Plaintiff when he made these statements.

48. Plaintiff asked Defendant Douglas to stop, and to please leave her alone.

49. Defendant Douglas ignored Plaintiff and continued to touch her belongings and make inappropriate comments.

50. In an authoritative tone, Plaintiff demanded that Defendant Douglas stop, however, Defendant Douglas defiantly continued.

51. Furthermore, Defendant Douglas took Plaintiff's water bottle and attempted to drink from it.

52. Defendant Brianna approached Defendant Douglas and Plaintiff as Defendant Douglas was going through Plaintiff's belongings.

53. Plaintiff told Defendant Brianna that Defendant Douglas was bothering her and making her uncomfortable.

54. Although Defendant Brianna was passing off the occurrence as playing around, Plaintiff informed her that she was indeed serious about feeling uncomfortable with Defendant Douglas.

55. Defendant Brianna did not tell Defendant Douglas to leave Plaintiff alone, or to go away, rather, Defendant Brianna simply walked away from the situation.

56. Defendant Douglas walked away for about five to ten minutes; however, he returned and began the inappropriate behavior again.

57. Again, Plaintiff requested Defendant Douglas stop the behavior and to please go away.

58. Eventually, Plaintiff began to yell at Defendant Douglas and begged him to leave her alone.

59. Defendant Douglas finally obliged Plaintiff's request.

60. After going to lunch, Plaintiff returned to her workstation, and Defendant Douglas immediately approached her.   Defendant Douglas stared at Plaintiff making her feel extremely uncomfortable.

61. Plaintiff told Defendant Douglas that he was making her feel uncomfortable and asked him to please leave her alone.

62. Defendant Douglas walked away from Plaintiff.

63. Plaintiff informed Defendant Brianna that she needed to use the restroom; however, Plaintiff instead went to Human Resources to report the situation.

64. Plaintiff met with Defendant Megan in Human Resources.

65. Defendant Megan told Plaintiff to write everything down, including but not limited to the threesome request with Ms. Musa and the incidents on May 30, 2019.

66. All of the incidents with Defendant Douglas were written in a statement and given to Human Resources.

67. Defendant Megan left to retrieve Plaintiff's direct supervisor, Defendant Pitts.

68. Plaintiff was told by both Defendant Megan and Defendant Pitts that they would check the cameras.

69. Upon information and belief, Defendant Megan and Defendant Pitts did not review the facility's cameras.

70. Plaintiff handed her statement to Human Resources.

71. Additionally, Plaintiff requested that she be moved to a different area so that she did not have to work near Defendant Douglas.

72. Plaintiff was told there would be a conversation between Defendants Douglas, Megan, and Pitts to instruct Defendant Douglas to stay away from Plaintiff.

73. Upon information and belief, Human Resources sent Defendant Douglas home for one day.

74. Defendant Amazon did not remove Plaintiff from the uncomfortable, hostile and harmful situation.

75. The following day, Plaintiff saw Defendant Douglas at work.

76. Defendant Douglas stared at Plaintiff, smirking and laughing at her.

77. Additionally, Defendant Douglas looked at Plaintiff in a creepy way, making Plaintiff feel extremely uncomfortable and unsafe.

78. Around June 2019, Plaintiff was promoted a second time as an Ambassador through the end of 2019.

79. Plaintiff went to Human Resources at Defendant Amazon, approximately four additional times to report Defendant Douglas.

80. Plaintiff informed them that Defendant Douglas was still making Plaintiff feel uncomfortable and that he was persisting with his harassing behavior.

81. Plaintiff has been in very close proximity to Defendant Douglas during numerous shifts she has had to work since May 30, 2019, making her feel uncomfortable, harassed, and unsafe.

82. Around June 16, 2019, Defendant Johnathan told Plaintiff that Defendant Douglas had two strikes against him, and that on the third he would be fired.

83. Around June 16, 2019, Plaintiff asked Defendant Amazon's Human Resources department for a copy of her statement.

84. Plaintiff was told that she would need a court order to have a copy of her own statement concerning the harassment by Defendant Douglas toward Plaintiff.

85. Additionally, Plaintiff was asked why she wanted a copy of her statement.

86. On another occasion, Plaintiff was exiting the restroom when a Human Resources representative approached her and asked her why she wanted a copy of the paperwork.

87. Plaintiff responded to the representative from Human Resources that she wanted a record of what had occurred and reminded Defendant Amazon that she wanted to be moved from Defendant Douglas' presence.

88. As of August 13, 2019, Defendant Amazon had still not moved Plaintiff from working near her harasser, Defendant Douglas.

89. As of August 13, 2019, Defendant Amazon had not taken remedial or disciplinary action against Defendant Douglas.

90. On August 13, 2019, Plaintiff filed a Charge of Discrimination with the EEOC.

91. The Charge number assigned was 530-2019-05600.

92. Around December 10, 2019, Plaintiff and Respondents attended a Fact-Finding Conference.

93. Around July 24, 2020, Plaintiff was notified that EEOC Investigator Schley believed, "the conference clearly indicated that Respondent [addressed Plaintiff's] concerns and the harassment ended."

94. Upon information and belief, Defendants were notified at the that EEOC Investigator Schley believed, "the conference clearly indicated that Respondent [addressed Plaintiff's] concerns."

95. Furthermore, Investigator Schley informed the parties that the case would be closed, and Plaintiff would be mailed the Right to Sue in a few weeks.

96. On July 30, 2020, Plaintiff was terminated.

97. Respondents terminated Plaintiff in retaliation for her opposition to the sexual harassment and Defendants' failure to adequately address the issue and her concerns.

98. The temporal proximity between the notification of Investigator Schley's findings and Plaintiff's termination is highly suggestive that Plaintiff's termination was retaliatory.

99. Any reasons Respondents offer for Plaintiff's termination are pretextual.

100.  The above are just some examples, of some of the discrimination and retaliation to which Defendants subjected Plaintiff to on a continuous and on-going basis throughout Plaintiff's employment.

101.  As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed

102.  As a result of Defendants' conduct and comments, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries

103.  Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

104.  As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

105.  Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

106.  Plaintiff claims that Defendants' unlawfully discriminated against her because of her sex and retaliated against her because she opposed the unlawful conduct of Defendants related to the above protected class.

107.  Plaintiff claims unlawful actual discharge and also seeks reinstatement.

108.    Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

109.    The Defendants have exhibited a pattern and practice of not only discrimination but also retaliation

110.    Plaintiff claims alternatively that Plaintiff was an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendant owed and breached its duty to Plaintiff to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

**FIRST CAUSE OF ACTION**
**<u>DISCRIMINATION UNDER TITLE VII</u>**
**(against Corporate Defendants only)**

111.    Plaintiff, Shaquana Hardy, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

112.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of TPC. Plaintiff complains of Defendant the TPC's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

113.    SEC. 2000e-2. *[Section 703]* states as follows:

(a) Employer practices

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

114.   Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her sex/gender

115.   As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

\

**SECOND CAUSE OF ACTION**
**TITLE VII HOSTILE WORK ENVIRONMENT**
**(against Corporate Defendants only)**

116.   Plaintiff, Shaquana Hardy, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

117.   Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

118.   An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998)

119.     Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." <u>Andrews v. city of Philadelphia</u>, 895 F.2d 1469, 1486 (3d Cir. 1990).

120.     Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." <u>Huston v. Procter & Gamble Paper Prods. Corp.</u>, 568 F.3d 100, 105 (3d Cir. 2009).

121.     The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." <u>Jensen v. Potter</u>, 435 F.3d 444, 446 (3d Cir. 2006).

122.     Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered and that the working environment was intimidating, hostile, or abusive.

123.     Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment

124.     Sexually explicit and verbally- and physically- harassing conduct filled the environment of Plaintiff's work area.

125.     Defendants knew that the sexually explicit and verbally- and physically- harassing conduct filled Plaintiff's work environment.

126.     Sexually explicit verbally- and physically- harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

127.     Plaintiff subjectively regarded the sexually explicit verbally- and physically- harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

128.   The conduct was severe

129.   The conduct was emotionally damaging and humiliating.

130.   The conduct unreasonably interfered with Plaintiff's work performance.

131.   The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

132.   The Defendants provided a futile avenue for complaint

133.   They Defendants acted upon a continuing course of conduct.

134.   As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**THIRD CAUSE OF ACTION**
**RETALIATION UNDER TITLE VII**
**(against Corporate Defendants only)**

135.   Plaintiff, Shaquana Hardy, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

136.   Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

137.   42 U.S.C. § 2000e-3. Other unlawful employment practices

138.   (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this

subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

139.    The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.")

140.    Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. <u>Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee</u>, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

141.    Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. <u>White</u>, 548 U.S. at 61-62 (rejecting

authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation)

142.   "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir. 1996); <u>Griffiths v. CIGNA Corp.</u>, 988 F.2d 457, 468 (3d Cir. 1993); and <u>Sumner v. United States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds <u>by Miller v. CIGNA Corp.</u>, 47 F.3d 586 (3d Cir.1995)

143.   An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. <u>See Moore</u>, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class."

144.   Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. <u>See Thompson v. North American Stainless, LP</u>, 131 S. Ct. 863, 868 (2011).

145.   Here, the Defendants discriminated against Plaintiff because of her protected activity under Title VII.

146.   Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex/gender was violated.

147.   Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

148.   Defendants engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

149.   There was a causal connection between the Defendants' materially adverse actions and Plaintiff's protected activity.

150.   The Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

151.   The Defendant acted upon a continuing course of conduct

152.   Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendant's actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendant's antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

153.   As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**FOURTH CAUSE OF ACTION**
**DISCRIMINATION**
**UNDER NEW JERSEY STATE LAW**
**(against all defendants)**

154.   Plaintiff, Shaquana Hardy, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length

155.   New Jersey's Law against Discrimination Section 10:5-12(a) sets forth in pertinent part as follows: "It shall be an unlawful employment practice, or, as the case may be, an unlawful

discrimination: a) For an employer, because of race, . . . , color, national origin . . . to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

156.    The full statute reads as follows:

**10:5-12. Unlawful employment practices, discrimination.**

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

a.    For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, sex, gender identity or expression, disability or atypical hereditary cellular or blood trait of any individual, or because of the liability for service in the Armed Forces of the United States or the nationality of any individual, or because of the refusal to submit to a genetic test or make available the results of a genetic test to an employer, to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment; provided, however, it shall not be an unlawful employment practice to refuse to accept for employment an applicant who has received a notice of induction or orders to report for active duty in the armed forces; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment any person on the basis of sex in those certain circumstances where sex is a bona fide occupational qualification, reasonably necessary to the normal operation of the particular business or enterprise; provided further that nothing herein contained shall be construed to bar an employer from refusing to accept for employment or to promote any person over 70 years of age; provided further that it shall not be an unlawful employment practice for a club exclusively social or fraternal to use club membership as a uniform qualification for employment, or for a religious association or organization to utilize religious affiliation as a uniform qualification in the employment of clergy, religious teachers or other employees engaged in the religious activities of the association or organization, or in following the tenets of its religion in establishing and utilizing criteria for employment of an employee; provided further, that it shall not be an unlawful employment practice to require the retirement of any employee who, for the two-year period immediately before retirement, is employed in a bona fide executive or a high policy-making position, if that employee is entitled to an immediate non-forfeitable annual retirement benefit from a pension, profit sharing, savings or deferred retirement plan, or any combination of those plans, of the employer of that employee which equals in the aggregate at least $27,000.00; and provided further that an employer may restrict employment to citizens of the United States where such restriction is required by federal law or is otherwise necessary to protect the national interest.

157.    Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff as set forth herein.

158.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.


**FIFTH CAUSE OF ACTION**
**RETALIATION**
**UNDER NEW JERSEY STATE LAW**
**(against all defendants)**

159.    Plaintiff, Shaquana Hardy, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

160.    New Jersey's Law against Discrimination Section 10:5-12(d) sets forth that it is unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act

161.    Defendants violated this section as set forth herein

162.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.


**SIXTH CAUSE OF ACTION**
**AIDING AND ABETTING**
**UNDER NEW JERSEY STATE LAW**

**(against all defendants)**

163.    Plaintiff, Shaquana Hardy, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

164.    New Jersey's Law against Discrimination Section 10:5-12(e) sets forth in pertinent part as follows: "Unlawful employment practices, discrimination.  It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:  e) For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so.

165.    Defendants engaged in an unlawful discriminatory practice by aiding and abetting the discrimination against the Plaintiff as set forth herein.

166.    Defendants violated all other applicable sections of N.J. Stat. § 10:5-12(e) et. Seq.

167.    As such, Plaintiff has been damaged as set forth herein.

168.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New Jersey's Law against Discrimination.

## JURY DEMAND

Plaintiff Hardy requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hardy demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court

deems just and proper.


Dated: Philadelphia, Pennsylvania                    **DEREK SMITH LAW GROUP, PLLC**

      November 18, 2020                              *Attorneys for Plaintiff Hardy*


By: _/s/ Catherine W. Smith, Esq._____
      Catherine W Smith, Esquire
      1835 Market Street, Suite 2950
      Philadelphia, Pennsylvania 19103
      (215) 391-4790
      catherine@dereksmithlaw.com